## WILLIAM T. LARKIN ET AL. *v.* EMPIRE BUILDING & LOAN ASSOCIATION.

[No. 32, October Term, 1930.]

*Decided January 13th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*David Ash,* for the appellants.

*Wirt A. Duvall,* with whom was *Leon I. Kappelman* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

In December, 1927, William T. Larkin was the owner of fee simple property in Baltimore City known as the Granada

Apartments, at which time he borrowed $40,000 from the Mortgage Guarantee Company, secured by a first mortgage on said property. At the same time he borrowed additional money from the appellee, the Empire Building & Loan Association, secured by a second mortgage on the property; this mortgage being for $8,500. In January, 1928, Larkin sold the equity of redemption, and together with his wife conveyed the property, subject to the mortgages above mentioned, to the Northeast Realty Company. The second mortgage being in default for non-payment of interest, on April 27th, 1929, foreclosure proceedings were instituted, and a certain Leon I. Kappelman was appointed trustee to make sale of the property, and, after filing bond and advertising the property, it was sold on May 31st, 1929, to David Kleiman for the sum of $3,700, subject to the prior mortgage of $40,000. This sale was promptly reported to the court, and an order *nisi* passed thereon. On July 12th, 1929, exceptions to the ratification of the sale were filed by the appellants, which exceptions, after amendment made on October 31st, 1929, were being heard by the chancellor on November 25th, 1929. On the last mentioned date, all of the parties in interest having reached an agreement of settlement, which was reduced to writing and signed by them, the trustee in the foreclosure proceeding reported the sale in accordance with the terms of the agreement, and asked that the same be immediately ratified, which was also in accordance with the agreement. By the terms of the agreement, the sale to Kleiman was set aside, and the appellants were substituted as purchasers; the sale being at and for the sum of $4,700, or $1,000 more than the sale to Kleiman; whereupon the chancellor ratified the sale to the substituted purchasers and referred the case to one of the standing auditors to state an account in accordance with the terms of the agreement, which had been filed with and made a part of the trustee's report of sale and the basis of the chancellor's action in setting aside the first sale and ratifying the sale to the substituted purchasers. On December 28th, 1929, the auditor's report and account was filed; and

on the same day the appellants filed exceptions to the final ratification of that report and account. These exceptions were heard by the chancellor, and on February 8th, 1930, an order was passed dismissing the exceptions and finally ratifying and confirming the auditor's report and account. It is from that order that the appeal here is prosecuted.

By the agreement of November 25th, 1929, it was expressly provided what the auditor should include in the account to be stated; and it is from this agreement, supplemented by the order of court passed in conformity therewith, that the authority of the auditor in this case is derived. The original exceptions filed were general in their nature; and, if there are any of which the lower court could take cognizance, they are those contained in the additional exceptions, in which apparently the appellants questioned the correctness of a number of amounts found by the auditor to have been expended by the trustee, and credit for which the trustee was allowed. We are unable to ascertain upon what other theory the exceptions could have been filed, as there can be no doubt that the account stated by the auditor must have been made in accordance with the terms of the agreement between the parties. It is clear that the general purpose of the agreement, which was entered into during the hearing on the exceptions to the ratification of the mortgage sale, was that it should result in the reconveyance to the appellants of the equity of redemption in the property, and the payment to the appellee, in settlement of its mortgage, of a sum arrived at in the method prescribed by the agreement; or, in other words, a full compliance with the agreement would put the appellants in possession and ownership of the property, subject only to the first mortgage of $40,000, saving them harmless from the results of having placed a second mortgage thereon, to the extent specifically provided for in the agreement.

The settlement of the questions before us, therefore, largely depends upon the construction and meaning of this agreement; the essential parts of which, for the case now before us, being:

"It is hereby agreed that the matter of the exceptions to the sale reported in this cause, and the matters which have been raised in connection therewith at the hearing of said exceptions, shall be settled and compromised, as follows:

"1.   The sale so reported shall be set aside and the deposit made thereunder refunded to the purchaser. In lieu of such sale the property (subject to the existing first mortgage of $40,000 thereon) shall be reported sold to William T. Larkin and Elizabeth A. Larkin, his wife, as substituted purchasers, at and for the price of $4,700, in addition to which price, however, the said William T. Larkin and Elizabeth A. Larkin are to pay the amount or amounts to be determined as hereinafter provided.   It is hereby agreed by all of the parties in interest that such sale be immediately ratified and confirmed.   Said purchase price of $4,700 is to be paid to the trustee appointed hereunder immediately upon the ratification of such sale and the papers are to be referred to one of the standing auditors of this Court to state an account, but possession of the property is not to be given to the purchasers until payment of the balance of the mortgage indebtedness ascertained to be due to the bailiff has been made in pursuance to paragraph No. 3 hereof. * * *

"3.   That the said William T. Larkin and Elizabeth A. Larkin further agree to pay, in addition to the purchase price, which has been paid, to the plaintiff, such balance as may be found to be due to it in the auditor's account to be stated in this cause upon its mortgage, after applying against such mortgage indebtedness the proceeds of said sale, to wit: the sum of $4,700 and after deduction from or crediting against such mortgage indebtedness the following sum or amount which was an overcharge and should not have been deducted from the mortgagors: Attorney's fees, $571.30; Entrance fees, $850.00; President's fees, $5.00; Committee's fees, $15.00; $1,441.30.   The receipts and disbursements by the trustee or for his account since he took charge after his appointment in

this cause, said date to be as of date he was appointed trustee up to the date the management is turned over Abramson and Oliner shall be included in the audit establishing a debit or credit balance of mortgagee's claim to be stated hereunder. If the parties can agree upon such balance then an auditor's account establishing the same may be dispensed with. Thirty (30) days from the final ratification of such account or determination by agreement of said amount shall be allowed said purchasers, if desired, for the payment of any balance so found due the plaintiff; and on making such payment deed to the property shall be delivered to them.

"4. It is further agreed that all trustee's commission shall be waived by the trustee, and that none shall be charged; neither any fee to counsel to the plaintiff or trustee. Also that the court costs in this cause up to the ratification of the sale, shall be paid by the plaintiff, including herein cost of advertising, expense of sale, and any other expenses. * * *

"6. For any amount which may be determined to be payable by the said William T. Larkin and Elizabeth A. Larkin to the plaintiff as aforesaid, * * * a lien upon the property sold hereunder is reserved subject to the aforesaid first mortgage for $40,000 and any renewal or extension thereof and the court shall have full power and authority to order the resale of said property for the payment of said amount in case the same is not paid. Such lien may be either expressly reserved in the deed from the trustee to the said William T. Larkin and Elizabeth A. Larkin, the purchasers, (which deed however shall be executed and delivered to Messrs. Abramson and Oliner to be held in escrow until said balance ascertained to be to the plaintiff has been paid) as they may elect."

The agreement further provides that from its date the property shall be turned over to independent management, to be held and managed for the period and under the stipulations therein set forth. The entire agreement contemplates

and directs an accounting between the appellants and three different parties for different periods—namely, first, an accounting with the Northeast Realty Company from the time it became the owner of the equity of redemption to the appointment of the trustee under the mortgage foreclosure proceeding; second, an accounting with the trustee from the time of his appointment to the date of the agreement; and third, an accounting with Abramson and Oliner from the date of the agreement until their management ends. The account now under consideration, which is being attacked in these proceedings, is the one stated by the auditor between the trustee in the foreclosure proceeding and the appellants, to be made in accordance with the provisions of the settlement agreement which we have quoted.

We have examined carefully the auditor's account as set forth in the record, and find it to be in strict conformity with the agreement of the parties. The trustee was first charged with the purchase money of $4,700; second, with the amount of the costs of the foreclosure proceeding, up until final ratification of the sale, which were to be paid, and were paid, to the trustee by the appellee; and, third, with the total amount of rents and revenues derived from the property during the term of his management. Against this he was allowed a credit for the cost of the foreclosure, excluding commissions and attorney's fees, as provided in the agreement, and payments and disbursements made in keeping the apartments in repair and furnishing such things as are ordinarily furnished by apartment house owners in order to keep the property tenanted, also disbursements for taxes, water rent, and interest on the first mortgage; or, in a word, the trustee under the agreement was to be allowed credit for all expenditures made in connection with this property which a prudent owner would ordinarily make in respect to similar property. The account shows that the rents collected by the trustee amounted to $5,517.50, and he was allowed expenditures to the amount of $4,168.72, about half of which latter sum was made up of $1,200, being six months'

interest on the first mortgage, and $810 taxes. The next largest item allowed was for coal, amounting to something over $500. All of the other items were for comparatively small amounts, covering expenditures for papering, painting, water rent, carpenter work, janitor, plumbing, and the like.

At the hearing before the chancellor, the trustee was examined at length, and produced vouchers for the items of credit allowed, and further testified that these expenditures were necessary to keep the apartments in proper condition to be rented, and that the amounts paid were in no case other than reasonable for the services rendered or materials furnished. The appellants offered no testimony in contradiction. The auditor, after subtracting the expenditures allowed from the amount which the trustee was charged with having received, found a balance of $6,012.28 in the trustee's hands applicable to the payment of the mortgage. The amount of the mortgage and interest, as filed in the proceeding, was $8,701.45, from which was first deducted $1,441.30, representing fees and other charges included in the mortgage, which by the agreement were to be excluded, leaving the correct amount of the mortgage due $7,260.15, to the payment of which the balance in the trustee's hands, as above stated, was applied, leaving still due and unpaid on the mortgage the sum of $1,247.87. We find that the theory of the account is in accordance with the agreement of settlement; we have carefully examined each of the items allowed as a credit, together with the evidence adduced by the trustee in support thereof, and find that it sustains the allowance in each and every instance.

We find no error in the order dismissing the exceptions and finally ratifying the auditor's report and account, and the same will be affirmed.

*Order affirmed, with costs to the appellee.*